■ PATRICIA J. PARTLOW, Appellant, v BODO H. K. KOLUPA, Respondent.—Casey, J. Appeal from an order and judgment of the Supreme Court at Special Term (Ellison, J.), entered June 18, 1985 in Tompkins County, which granted defendant's motion to dismiss the complaint.

Under the transactional analysis concept of the doctrine of res judicata, plaintiff's claim of conversion in the instant action is barred since it could have been litigated in the prior divorce action between the parties. Special Term's order and judgment dismissing the complaint must therefore be affirmed.

Plaintiff's complaint alleges that defendant converted certain items of silver. Plaintiff's complaint in the prior divorce action also alleged that defendant converted certain items of silver. Before the divorce action came to trial, the parties entered into a stipulation which resolved a number of issues and left for trial the issues of equitable distribution as defined in Domestic Relations Law § 236 (B). Plaintiff also agreed to withdraw her conversion claim "without prejudice to the assertion by plaintiff of such claim and without prejudice to the assertion by defendant of any defense he may make

against such claim of plaintiff in a subsequent trial upon the issues of 'equitable distribution' should it be determined by the Court that such claim of plaintiff is properly maintainable at such trial". Plaintiff did not raise the conversion claim at the subsequent trial of the equitable distribution issues, and the divorce decree contains no reference to the items of silver.

As we said in *Hyman v Hillelson* (79 AD2d 725, 726, *affd* 55 NY2d 624), "the judgment in the former action is conclusive in the later, not only as to any matter actually litigated therein, but also as to any that might have been litigated". Applying the transactional analysis, prescribed in *Matter of Reilly v Reid* (45 NY2d 24, 29), to the facts herein leads us to conclude that plaintiff's conversion claim is barred by the former judgment. There can be little doubt that the conversion claim arose out of the same factual grouping as the claims in the divorce action. In fact, it was originally part of the complaint for divorce. Although the cause of action was withdrawn by stipulation of the parties, the right to assert the claim again in the later trial of the equitable distribution issues was expressly preserved.

Plaintiff points out that defendant argued in the divorce action that the conversion cause of action was not maintainable as part of the equitable distribution issues. Thus, according to plaintiff, defendant cannot now argue that plaintiff should have litigated her conversion claim in the divorce action. We agree with Special Term that plaintiff's argument must be rejected in view of the express language of the stipulation withdrawing the conversion claim from the divorce action, which provided that the conversion claim could be asserted in the subsequent trial of the equitable distribution issues subject to the court's ruling as to whether such a claim was maintainable. Plaintiff elected not to assert the claim and sought no court ruling as to whether it was maintainable.[*] Defendant's argument in the prior action, although inconsistent with his argument herein, did not deprive plaintiff of the opportunity to assert her conversion claim in the divorce action.

Order and judgment affirmed, with costs. Kane, Casey and Weiss, JJ., concur.

Mahoney, P. J., and Levine, J., dissent and vote to reverse

---

[*] Since the issues raised in the conversion claim are directly related to "the respective rights of the parties in their separate or marital property", which must be determined by the court in a divorce action (Domestic Relations Law § 236 [B] [5] [a]), we see no reason why the conversion claim could not have been litigated in the divorce action.

in a memorandum by Levine, J. Levine, J. (dissenting). We respectfully dissent. Although New York has adopted the transactional analysis approach of the Restatement (Second) of Judgments *(see,* Restatement [Second] of Judgments § 24 [1982]) to the doctrine of res judicata *(O'Brien v City of Syracuse,* 54 NY2d 353, 357; *Smith v Russell Sage Coll.,* 54 NY2d 185, 193; *Matter of Reilly v Reid,* 45 NY2d 24, 29-30), this broader application of the doctrine makes the caveat even more compelling that "[i]n properly seeking to deny a litigant two 'days in court', courts must be careful not to deprive him of one" *(Matter of Reilly v Reid, supra,* p 28). Here, plaintiff had withdrawn her separate cause of action for conversion of the silver in the divorce action, reserving her right to assert it in the ensuing trial of equitable distribution issues, if it was determined by the court that the claim was properly maintainable therein. The conversion claim was never subsequently litigated and the matrimonial court's disposition of the equitable distribution issues neither resolved that claim nor disposed of the property allegedly converted. Thus, we have nothing more here than a prior, voluntary dismissal of a cause of action which was never actually litigated. Therefore, res judicata would preclude this claim only if compulsory joinder was required because the conversion was part of the same "transaction, or series of connected transactions" as the claims litigated in the parties' dispute over equitable distribution in the matrimonial action (Restatement [Second] of Judgments § 24 [1] [1982]). What constitutes such a transaction or series of transactions for claim preclusion purposes is determined pragmatically, by weighing such considerations as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage" (Restatement [Second] of Judgments § 24 [2] [1982]). In our view, the relationship between the parties' equitable distribution claims and plaintiff's cause of action for conversion is so minimal, and the nature of the court's matrimonial jurisdiction is so distinct from that in litigation of a conversion action, that the foregoing criteria for preclusion have not been met.

At the outset, it must be kept in mind that the Equitable Distribution Law has not changed the principles that matrimonial actions are purely statutory, that there is no common-law jurisdiction over them, and that the authority of the court in divorce "is confined altogether to the exercise of such express and incidental powers as are conferred by the statute"

(*Ackerman v Ackerman,* 200 NY 72, 76; *see, People ex rel. Levine v Shea,* 201 NY 471, 478; *Mohrmann v Kob,* 264 App Div 209, 211, *revd on other grounds* 291 NY 181). The limited, statutory jurisdiction of a matrimonial court over the property of the parties under the Equitable Distribution Law extends to (1) adjudicating whether such property is marital property or separate property (Domestic Relations Law § 236 [B] [5] [a], [b]), applying solely the statutory definitions of each category (Domestic Relations Law § 236 [B] [1] [c], [d]); (2) equitably distributing marital property according to the statutory criteria for such distribution (Domestic Relations Law § 236 [B] [5] [c], [d]); (3) where appropriate, making a distributive award of specific property "to supplement, facilitate or effectuate a distribution of marital property" (Domestic Relations Law § 236 [B] [5] [e]); and (4) awarding, where appropriate, the use and occupancy of the marital home and its household effects (Domestic Relations Law § 236 [B] [5] [f]). In making the foregoing determinations, the form of ownership of marital property during the term of the marriage is statutorily irrelevant (Domestic Relations Law § 236 [B] [1] [c]). Obviously, all of these property dispositions are prospective only from the time of the divorce decree. The court in a matrimonial action does not look backward to how the parties acquired or disposed of assets between them during the marriage, except as may be relevant to the specific definitions of separate or marital property and to the specific statutory criteria for apportioning marital property applicable to the particular case at hand.

In contrast, an action for conversion focuses on a specific past event and a specific form of tortious wrongdoing: the act of dominion and control wrongfully exerted over the personal property of another in denial of or inconsistent with the latter's rights therein (*Meyer v Price,* 250 NY 370, 381). Conversion is generally considered a possessory action, the wrong being against possession rather than title (23 NY Jur 2d, Conversion, and Action for Recovery of a Chattel, § 18, at 224). Monetary damages are awarded for the value of the property at the time of the taking (23 NY Jur 2d, Conversion, and Action for Recovery of a Chattel, § 66, at 291), plus interest on that value from the time of the taking (*Hillsley v State Bank,* 24 AD2d 28, 31, *affd* 18 NY2d 952). Special damages and punitive damages are also recoverable (23 NY Jur 2d, Conversion, and Action for Recovery of a Chattel, §§ 73, 74, at 307, 308). Punitive damages are claimed by plaintiff here, based upon allegations that defendant's misap-

propriation of the silver was wanton and malicious. As a transitory tort action for a sum of money only, the parties to a suit for conversion are entitled to trial by jury (CPLR 4101 [1]).

Several conclusions follow from the foregoing analysis. First, when the statutory matrimonial jurisdiction of the Supreme Court is *solely* invoked, adjudication of a cause of action for conversion and award of compensatory and/or exemplary money damages as between the spouses would clearly not fall within the matrimonial court's express or incidental statutory authority. Therefore, the only reasons that a claim for conversion can be interposed in a matrimonial action is that jurisdiction over divorce is conferred on the Supreme Court, the State's court of original jurisdiction (NY Const, art VI, § 7), and the State's liberalized rule for *permissive* joinder of claims as between the same adverse parties, whether or not the claims are related (CPLR 601; Siegel, NY Prac § 126, at 155). Permissive joinder, however, is considerably broader than the mandatory joinder of claims implicit in the doctrine of res judicata. "There is no like compulsion on a plaintiff who has a number of claims against a defendant to join them in a single action; he may join them if he wishes, but he is not obliged to do so out of fear that he will lose any claims that he omits to join" (Restatement [Second] of Judgments § 24, comment h [1982]). It further follows that, once plaintiff withdrew her cause of action for conversion in the divorce suit, adjudication of the conversion claim was beyond the limited, statutory authority of the matrimonial court in the equitable distribution trial.

Second, claims for conversion and for equitable distribution are not based on the same, operative "congeries of facts" or the "same gravamen of the wrong" that typically satisfies the transactional test for applying res judicata *(Matter of Reilly v Reid,* 45 NY2d 24, 29, *supra).* To illustrate, the fact of conversion during the marriage is largely irrelevant to determining whether property is separate or marital and, if the latter, the equitable distribution thereof. And the spouse whose property was converted during the marriage would be entitled to damages, irrespective of which spouse is equitably awarded that property or, indeed, whether the converted property is still possessed by either spouse at the time of the divorce and thereby subject to distribution. Likewise, the act of converting property is not part of a "series of connected transactions" as the operative facts in equitable distribution. Such an act is not one of a series of "successive but nearly simultaneous acts, or

acts which though occurring over a period of time were substantially of the same sort and similarly motivated" (Restatement [Second] of Judgments § 24, comment d [1982]), as the acts or transactions of the parties relevant to the statutory criteria for equitable distribution. Of course, to the extent that conversion issues do become relevant to and are actually litigated and determined in the course of the trial and disposition of equitable distribution, the parties will be precluded from relitigating those issues in any subsequent conversion action, under the doctrine of collateral estoppel.

In sum, preclusion is simply not dictated here under the transactional analysis approach of the Restatement (Second) of Judgments. In effect, the majority's decision imposes mandatory joinder of every conceivable legal dispute between the spouses upon the bringing of a divorce action. Such mandatory joinder will only serve either to obfuscate and delay resolution of the already complex and difficult issues of equitable distribution, or to pose a trap for the unwary. For these reasons, we would reverse and reinstate the complaint.